IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| WASEEM DAKER, | |
| Plaintiff, | CIVIL ACTION NO.: 6:18-cv-32 |
| v. | |
| COMMISSIONER GREGORY DOZIER, et al., | |
| Defendants. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, while incarcerated at Macon State Prison in Oglethorpe, Georgia, filed this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000cc-1 *et seq.*, contesting certain conditions of his confinement while incarcerated at Georgia State Prison ("GSP") in Reidsville, Georgia.[1] Docs. 1, 1-1. Plaintiff also filed a Motion for Leave to Proceed *in Forma Pauperis*, doc. 2, and Motions for Preliminary Injunction or Temporary Restraining Order, docs. 6, 7, 8, 9.[2] For the reasons set forth below, the Court **DENIES** Plaintiff leave to proceed *in forma pauperis*. Additionally, I **RECOMMEND** that the Court **DISMISS without prejudice** Plaintiff's Complaint, **DENY as moot** Plaintiff's remaining Motions, docs. 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, **DIRECT** the

---

[1] Plaintiff is now confined at Valdosta State Prison. Doc. 16.

[2] In addition, Plaintiff filed two identical Motions for Recusal of Judge R. Stan Baker and Judge J. Randal Hall, docs. 3, 5, which are still pending.

Clerk of Court to close this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.[3]

## PLAINTIFF'S ALLEGATIONS

In his Complaint, Plaintiff asserts numerous claims against dozens of Defendants regarding his confinement at GSP. Doc. 1-1. Plaintiff contends that: (1) Defendants' shaving policies and customs violate the First and Eighth Amendments and RLUIPA; (2) Defendants' disciplinary report procedures violate substantive and procedural due process as well as RLUIPA; (3) Defendants' administrative segregation review violates the Equal Protection Clause; (4) Defendants retaliated against him by keeping him in administrative segregation; (5) Defendants' restrictions on inmates in administrative segregation as well as the cell conditions there violate the First and Eighth Amendments and RLUIPA; and (6) Defendants violate due process by confiscating prisoners' personal property without inventory or opportunity for return.[4] Id. at 55–58.

---

[3] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to grant summary judgment *sua sponte* when a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that R&R served as notice that claims would be *sua sponte* dismissed). This R&R constitutes fair notice to Plaintiff that his suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review *de novo* properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that an R&R constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

[4] As discussed in detail below, the Court will only reach the merits of Plaintiff's allegations if Plaintiff pays the entire filing fee upfront or is granted leave to appeal *in forma pauperis*.

Plaintiff contends Defendants maintain a custom of forcibly shaving inmates with unsanitary or broken clippers and ensure compliance with forced shavings through disciplinary reports, tasers, pepper-spray, and similar chemical agents. Id. at 6–9. Plaintiff contends the Georgia Department of Corrections' ("GDC") written policy requires shaving clippers be sanitized after every use to prevent the spread of infectious disease. Id. According to Plaintiff, Defendants ignore this policy and forcibly use broken or "unsanitized" clippers. As a result of Defendants' alleged shaving customs, Plaintiff was forcibly shaved several times, most recently on December 4, 2017. Id.

Plaintiff asserts Defendants threatened to forcibly shave him at various times, beginning on September 20, 2017, and occurring most recently on March 5, 2018. Id. at 9–13. Plaintiff contends Defendants created false disciplinary reports regarding his refusal to shave. Doc. 1-1 at 9–11. After Plaintiff refused to shave, Plaintiff alleges multiple Defendants forcibly shaved him, causing injuries to his shoulders, cuts and bruises on his neck, hands, wrists, and ankles, and skin damage to his pinky finger. Id. Afterward, Plaintiff alleges Defendants subjected him to a series of false disciplinary reports, confinement in administrative segregation, and continued threats of forced shaving. Id. at 11–13.

Plaintiff avers Defendants placed him in administrative segregation in violation of his due process rights. Id. at 13–19. Plaintiff contends administrative segregation hearings do not afford inmates a meaningful opportunity to be heard, and that the disciplinary report procedures run afoul of due process guarantees. Id. at 19–24. Finally, Plaintiff states the cell conditions and various restrictions imposed in administrative segregation violate his rights under the First and Eighth Amendment and his rights under RLUIPA. Id. at 24–55.

Plaintiff argues he is in "imminent danger of serious physical injury" from the forced shaves and from Defendants' means of enforcing the shaving policy, which include disciplinary action and the use of pepper spray and tasers. Id. at 6–8 & n.2, 58–59. Further, Plaintiff claims he is in imminent danger because Defendants injured him during past forced shaves, threaten future forced shaves with unsanitary clippers, and, when he is in administrative segregation, deny him adequate food, medical care, and exercise, and subject him to unsanitary cell conditions. Id. at 58–59.

In addition, Plaintiff avers he faces imminent danger due to Defendants' custom of providing insufficient food to prisoners in administrative segregation. Id. at 32–34. Plaintiff claims this custom caused him to lose 17 pounds and made him more susceptible to sinus infections. Id. As to imminent danger due to lack of adequate medical care, Plaintiff states Defendants have not provided timely care for his shoulder pain and nerve damage in his hands (although Plaintiff later underwent surgery for his right wrist). Id. at 35–37. Plaintiff also states Defendants do not provide timely dental care or dentist-recommended Sensodyne toothpaste. Id. Finally, Plaintiff feels he faces imminent danger due to unsanitary cell conditions because Defendants allegedly leave him exposed to feces, triggering allergy problems and three sinus infections. Id. at 38–39, 58.

## DISCUSSION

### I.  Three-Strikes Dismissal Under § 1915(g)

#### A.  Legal Standard

An incarcerated individual, such as Plaintiff, attempting to proceed *in forma pauperis* in a civil action in federal court must comply with the mandates of the Prison Litigation Reform Act ("PLRA"). Pertinently, 28 U.S.C. § 1915(g) of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The Eleventh Circuit Court of Appeals has explained that "[t]his provision of the PLRA, 'commonly known as the 'three strikes' provision,' requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998) (quoting Lyon v. Krol, 127 F.3d 763, 764 (8th Cir. 1997)), *abrogated in part on different grounds by* Jones v. Bock, 549 U.S. 199 (2007).[5] A prisoner barred from proceeding *in forma pauperis* due to the "three strikes" provision in § 1915(g) must pay the entire filing fee when he initiates suit.[6] Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir. 2001). When a prisoner who is barred by the "three strikes" provision seeks *in forma pauperis* status, courts must dismiss the complaint without prejudice. Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002) (finding that because the filing fee must be paid "at the time [the plaintiff-inmate] *initiates* the suit," plaintiff-inmates "cannot simply pay the filing fee after being denied in forma pauperis status" but may refile file

---

[5] In the Eleventh Circuit, dismissals for failing to follow court orders or for abusing the judicial process are also considered strikes. See Rivera, 144 F.3d at 731; Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1544 (11th Cir. 1993).

[6] The applicable filing fee is now $400.00. "The entire fee to be paid in advance of filing a civil complaint is $400. That fee includes a filing fee of $350 plus an administrative fee of $50, for a total of $400. A prisoner who is granted *in forma pauperis* status will, instead, be assessed a filing fee of $350 and will not be responsible for the $50 administrative fee. A prisoner who is denied *in forma pauperis* status must pay the full $400, including the $350 filing fee and the $50 administrative fee, before the complaint will be filed." Callaway v. Cumberland Cty. Sheriff Dep't, No. Civ. 14-4853, 2015 WL 2371614, at *1 (D.N.J. May 18, 2015); see also Owens v. Sec'y Fla. Dep't of Corr., Case No. 3:15cv272, 2015 WL 5003649 (N.D. Fla. Aug. 21, 2015) (noting that the filing fee applied to cases in which a prisoner-plaintiff is denied *in forma pauperis* status is $400.00).

5

action after dismissal and pay the entire filing fee upfront). The only exception is if the prisoner is "under imminent danger of serious physical injury." § 1915(g); Medberry v. Butler, 185 F.3d 1189, 1192 (11th Cir. 1999).

### B.     Plaintiff's Litigation History

Pursuant to its inherent authority under Federal Rule of Evidence 201, the Court takes judicial notice of the dispositions of many of Plaintiff's previous lawsuits.[7] The Court also takes judicial notice of the determination of the United States District Court for the Middle District of Georgia, finding that "Plaintiff has had more than three of his cases or appeals dismissed on the statutorily-enumerated grounds [of § 1915(g)]."[8] Daker v. Comm'r, No. 5:16-cv-538, 2017 WL 3584910, at *2 (M.D. Ga. Aug. 17, 2017).

---

[7]     Courts routinely take judicial notice of a plaintiff's litigation history when evaluating if the plaintiff has three strikes under § 1915(g). See Lloyd v. Benton, 686 F.3d 1225, 1226 (11th Cir. 2012); Rivera 144 F.3d at 721 (noting that the trial court took judicial notice of the results of plaintiff's prior lawsuits when evaluating if plaintiff had three strikes.) Moreover, the dispositions of a plaintiff's previous actions "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

[8]     This Court, as well as other courts, previously observed that Plaintiff is a serial litigant with a significant history of filing frivolous lawsuits. See, e.g., Daker v. Head, 739 F. App'x 597 (11th Cir. 2018) ("During his incarceration for murder, Daker has filed over a hundred pro se suits."); Daker v. Comm'r, Ga. Dep't of Corr., 820 F.3d 1278, 1281 (11th Cir. 2016) ("Daker has submitted over a thousand pro se filings in over a hundred actions and appeals in at least nine different federal courts."); Daker v. Head, No. 6:14-cv-47 (S.D. Ga. Sept. 8, 2014) (denying Plaintiff leave to proceed *in forma pauperis* due to three striker status); Daker v. Warren, No. 1:11-cv-1711, 2014 WL 806858, at *1 (N.D. Ga. Feb. 28, 2014) ("Waseem Daker is an extremely litigious state prisoner . . . ."). Moreover, this Court's review of Plaintiff's filing history reveals scores of other civil actions and appeals which were dismissed and which may count as strikes under § 1915(g). See In re Daker, No. 1:11-cv-1711, 2014 WL 2548135, at *2 (N.D. Ga. June 5, 2014) (summarizing Plaintiff's litigation history); see also Daker v. Dozier, No. 5:17-CV-0025, 2017 WL 3037420, at *2 (M.D. Ga. July 18, 2017) (reviewing Daker's status as a three-striker in light of the Eleventh Circuit opinion); Daker v. Bryson, No. 6:16-CV-57, 2017 WL 242615, at *5 (S.D. Ga. Jan. 19, 2017) (listing five cases, including the four listed here, which constitute strikes under § 1915(g)). The Eleventh Circuit already "determined that the 'three strikes' provision of the Prison Litigation Reform Act of 1995 is applicable to" Plaintiff. See, e.g., Letter dated May 29, 2014, in Daker v. Comm'r, No. 14–12139 (11th Cir. 2014); Letter dated April 18, 2014, in Daker v. Comm'r, No. 14–11571 (11th Cir. 2014).

Plaintiff has filed more than three civil actions or appeals which count as strikes under § 1915(g).[9] Actions filed by Plaintiff which count as strikes under § 1915(g) include:

(1) Daker v. Governor, Case No. 15-13179 (11th Cir. Order dated Dec. 19, 2016) (three-judge panel dismissing appeal as frivolous);

(2) Daker v. Ferrero, Case No. 15-13176 (11th Cir. Order dated Nov. 3, 2016) (three-judge panel dismissing appeal as frivolous);

(3) Daker v. Commissioner, Case No. 15-11266 (11th Cir. Order dated Oct. 7, 2016) (three-judge panel dismissing appeal as frivolous);

(4) Daker v. Warden, Case No. 15-13148 (11th Cir. Order dated May 26, 2016) (three-judge panel dismissing appeal as frivolous).;

(5) Daker v. Warren, Case No. 13-11630 (11th Cir. Order dated Mar. 4, 2014) (three-judge panel dismissing appeal as frivolous);

(6) Daker v. NBC, et al., No. 15-330 (2d Cir. May 22, 2015), ECF No. 35 (dismissing Plaintiff's appeal because it "lacks an arguable basis either in law or in fact");

(7) Daker v. Robinson, 1:12-cv-00118 (N.D. Ga. Sept. 12, 2013) (dismissing based on Plaintiff's failure to follow a court order); and

(8) Daker v. Dawes, 1:12-cv-00119 (N.D. Ga. Sept. 12, 2013) (dismissing based on Plaintiff's failure to follow a court order).

---

[9] In 2016, in a separate action, the Eleventh Circuit reviewed a district court order finding Daker accumulated at least three strikes under § 1915(g). See Daker v. Comm'r, Ga. Dep't of Corr., 820 F.3d 1278, 1284–85 (11th Cir. 2016). The Eleventh Circuit found that three of the five cases the district court relied on to form the basis of the three-strikes dismissal did not qualify as strikes. Id. The Eleventh Circuit explicitly declined to opine on whether Plaintiff had any other strikes. Id. at 1286 ("We express no view on whether Daker has any other strikes."). In calculating Plaintiff's strikes in this case, the cases that the Eleventh Circuit found did not qualify as strikes against Plaintiff have not been included.

>    (9) Daker v. Mokwa, 2:14-cv-395 (C.D. Cal. Feb. 4, 2014) (dismissing as frivolous, malicious, or failing to state a claim);

The above actions and appeals were dismissed for being frivolous, malicious, failing to state a claim for relief, or for abusing the judicial process, not on grounds which failed to address the merits of Plaintiff's claims.[10] As Plaintiff has filed at least three previously dismissed cases or appeals which qualify as strikes under § 1915(g), Plaintiff cannot proceed *in forma pauperis* unless he meets the "imminent danger of serious physical injury" exception to § 1915(g).

### C.  Section 1915(g)'s Imminent Danger Exception

"In order to come within the imminent danger exception, the Eleventh Circuit requires 'specific allegations of present imminent danger that may result in serious physical harm.'" Odum v. Bryan Cty. Judicial Circuit, No. CV407-181, 2008 WL 766661, at *1 (S.D. Ga. Mar. 20, 2008) (quoting Skillern v. Jackson, No. CV606-49, 2006 WL 1687752, at *2 (S.D. Ga. June 14, 2006)). In determining whether Plaintiff's allegations sufficiently overcome the three-strikes bar, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . . " (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))). However, the § 1915(g) exception requires plaintiffs include

---

[10] The last two cited causes of action were dismissed based on Plaintiff's failure to follow the orders of a court. The Eleventh Circuit treats dismissals for "abuse of the judicial process," including dismissals for providing false filing-history information and failing to comply with court orders, as "strikes" under § 1915(g). See Ingram v. Warden, 735 F. App'x 706 (11th Cir. 2018) (affirming that dismissals for failure to truthfully disclose litigation history constitute a strike under § 1915(g)); Rivera, 114 F.3d at 731 (dismissing for failure to disclose prior litigation is "precisely the type of strike that Congress envisioned when drafting § 1915(g)").

8

specific facts indicating serious physical injury is imminent. Brown v. Johnson, 387 F.3d 1344, 1349–50 (11th Cir. 2004). General or conclusory allegations, even construed liberally, do not "invoke the exception absent specific fact allegations of ongoing serious physical injury or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Id.; see also Margiotti v. Nichols, No. CV306-113, 2006 WL 1174350, at *2 (N.D. Fla. May 2, 2006).

"[A] prisoner cannot create the imminent danger so as to escape the three strikes provision of the PLRA." Ball v. Allen, No. 06-0496, 2007 WL 484547, at *2 (S.D. Ala. Feb. 8, 2007) (quoting Muhammad v. McDonough, No. CV306-527-J-32, 2006 WL 1640128, at *1 (M.D. Fla. June 9, 2006)). Moreover, harms already incurred or dangers now past do not justify an exception to the three strikes bar. Medberry, 185 F.3d at 1193 ("Prisoner's allegation that he faced imminent danger sometime in the past is an insufficient basis to allow him to proceed *in forma pauperis* pursuant to the imminent danger exception to the statute."); see also Parish v. Davis, No. 4:16-CV-148, 2016 WL 1579385, at *1 (N.D. Fla. Mar. 25, 2016) ("The imminent danger exception should be applied only in 'genuine emergencies' where 'time is pressing,' the 'threat or prison condition is real and proximate," and 'the potential consequence is serious physical injury.'" (quoting Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002))).

### D. Plaintiff's Claims of Imminent Danger

Plaintiff should not be excused from prepaying the filing fee because his claims do not show any imminent danger of serious physical injury. Rather, Plaintiff's claims, as drafted, show that he is "a seasoned vexatious litigant who has read 28 U.S.C. § 1915(g) and is manipulating it to serve his ends." Skillern, 2006 WL 1687752, at *2 (quoting McNeil v. United

9

States, No. C05-1975, 2006 WL 581081, at *3 n.3 (W.D. Wash. Mar. 8, 2006)); see also Daker v. Bryson, No. 6:16-CV-57, 2017 WL 242615, at *1 (S.D. Ga. Jan. 19, 2017).

First, the overwhelming majority of Plaintiff's claims do not approach § 1915(g)'s requirement of serious risk of imminent physical danger. First, the claims regarding the December 4, 2017 forcible shaving center on past physical injuries which occurred before Plaintiff filed his Complaint, not dangers Plaintiff faces in the imminent future. Likewise, Plaintiff's allegations related to his treatment in administrative segregation, including lack of exercise and unsanitary housing conditions, relate to past treatment without showing the possibility of serious future injury.[11] Claims based on other past forced shaving incidents with unsanitary hair clippers also seek redress for past injuries. Plaintiff's claims that Defendants violated his religious beliefs under RLUIPA, confiscated his property, and did not provide him due process at his disciplinary and administrative confinement hearings do not allege physical injury, much less an imminent threat of future serious *physical* injury.[12]

Although allegations of denied medical care can sometimes show imminent danger, Plaintiff's complaints—that he was denied his toothpaste of choice and denied speedy dental, orthopedic, and nerve care—fail to show that Plaintiff faces imminent, serious physical injury. Notably, some of these claims relate to past harm, as Plaintiff eventually received orthopedic

---

[11] In a similar case, Plaintiff alleged that he was denied outdoor recreation, that "he is housed with inmates who throw feces, and [he] is being denied adequate sanitation and cleaning supplies." Daker v. Dozier, No. 5:17-CV-0025, 2017 WL 3037420, at *4 (M.D. Ga. July 18, 2017). The Middle District of Georgia found these allegations insufficient to establish an exception to the three-strikes rule. Id. at *6.

[12] The circumstances Plaintiff alleges created imminent danger arose during Plaintiff's confinement at Georgia State Prison, but Plaintiff is now incarcerated at Valdosta State Prison in the Middle District of Georgia. Doc. 15. However, his "transfer does not affect [the] imminent danger analysis, as that analysis focuses on whether Smith alleged an imminent danger at the time his complaint was filed." Smith v. Dewberry, 741 F. App'x 683, 687 n.3 (11th Cir. 2018).

treatment and surgery for his nerve damage. Doc. 1-1 at 35–36. Similarly, while Plaintiff claims the lack of adequate food in administrative segregation caused sinus infections and weight loss, he admits his sinus infections have been successfully treated with antibiotics. Id. at 34. Plaintiff does not describe any serious physical harm related to his purported weight loss.

Only Plaintiff's claims related to Defendants forcible use of broken or unsanitary hair clippers begin to approach the "imminent danger of serious physical injury" requirement. Here, however, Plaintiff merely offers generalized and conclusory allegations devoid of any specific facts showing an actual, imminent threat of physical injury. Plaintiff alleges the damaged, unsanitized clippers may spread HIV or hepatitis, but this is simply hypothetical conjecture. Plaintiff claims he has been forcibly shaved with allegedly dangerous clippers at least nine times since February 5, 2015, but does not claim to have contracted any infection or disease or suffered any other serious, negative health effects.[13] Id. at 8. Moreover, while Plaintiff claims that Defendants use force and chemical agents to effectuate the forced shavings, he does not state that Defendants used these chemical agents on him.

Generalized allegations such as these do not sufficiently demonstrate that the prisoner faces "imminent danger of serious physical injury" as required under § 1915(g). See, e.g., Daker v. Dozier, No. 5:17-CV-0025, 2017 WL 3037420, at *5–6 (M.D. Ga. July 18, 2017) (finding Daker's nearly identical allegations, including forced shavings with unsanitary clippers and poor administrative confinement conditions, did not show imminent danger of serious physical injury); Ball v. Allen, No. CIV. 06-0496, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (finding the provision of clean clothes twice per week, unsanitary showers, inadequate fire safety

---

[13]   Indeed, in another action, Plaintiff made similar allegations concerning the use of broken, unsanitary clippers, which he claims started as early as 2012. See Daker v. Bryson, No. 6:16-CV-57, 2017 WL 242615, at *1 (S.D. Ga. Jan. 19, 2017). Despite this apparently longstanding practice, Plaintiff has not suffered any of the serious physical injuries he claims this custom creates.

11

in cells, lack of cleaning supplies for cells, inadequate lighting, and inadequate, unsanitary, and contaminated food and beverages, are insufficient under § 1915(g)).  Plaintiff, therefore, fails to show the danger posed by forced shaving warrants application of the § 1915(g) exception.

At best, Plaintiff shows the forced shavings caused him a series of cuts, bruises, shoulder pain, and skin damage and that he will likely be subject to this custom again.[14]  Doc. 1-1 at 8 & n.2, 11.  Even assuming, without deciding, that the threat that Plaintiff may endure these same injuries in the future is sufficiently "imminent" and "serious" to trigger the exception to § 1915(g), Plaintiff still cannot avail himself of this exception because his actions created the harm.  Plaintiff alleges Defendants forcibly shaved him because he refused to comply with the prison's grooming policy due to a religious objection.  Id. at 6, 8–11.  Because Plaintiff is subjected to Defendants' forced shaving custom due to his own behavior, Plaintiff is empowered to end the forcible shaving by choosing to comply with the grooming policy.  What Plaintiff cannot do, however, is create a physically harmful situation through his own conduct and then claim the dangers his actions create excuse him from the PLRA's three-strikes bar.  Ball, 2007 WL 484547, at *2 (prisoner cannot create imminent danger to escape three strikes rule);

---

[14]     Although not mentioned in his Complaint, Plaintiff argues in his preliminary injunction Motion that "[c]ourts have repeatedly recognized that use of unsanitized clippers satisfies" § 1915(g).  Doc. 6 at 8.  As support, Plaintiff cites: Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007) (finding a prisoner's "allegation that he is at serious risk of contracting HIV or Hepatitis C, if true, more than plausibly raises the specter of serious physical injury"); Bingham v. Morales, No. CV 311-019, 2011 WL 53585941, at *1 n.2 (S.D. Ga. Nov. 4, 2011) (noting that the magistrate judge concluded that prisoner satisfied imminent danger exception based on allegation that prisoner was forced to share razors with other inmates under unsanitary conditions); James v. Dormire, No. 07-4141, 2008 WL 625027, at *2–3 (W.D. Mo. Mar. 4, 2008) (allowing a claim to proceed based on allegations that sharing electric razors presented danger of spreading infection, then found the § 1915(g) exception inapplicable when officials showed that they cleaned the razors between uses with Barbicide).  Each of these cases is distinguishable from Daker's claims.  First, none of these cases involve duplicative, longstanding allegations of imminent harm with infectious diseases which have never come to fruition, like Plaintiff's forced shaving allegations.  Second, none involve an alleged imminent danger of serious physical injury of the inmate's own making, as Plaintiff's refusal to comply with GSP's grooming policy does.

Muhammad, 2006 WL 1640128, at *1.  Thus, he cannot invoke the §1915(g) exception based on this harm.

The above reasons demonstrate that § 1915(g) bars Plaintiff from proceeding *in forma pauperis* in this action.[15]  Plaintiff has not paid the filing fee required of all plaintiffs who are not allowed to proceed *in forma pauperis*.  I, therefore, **RECOMMEND** the Court **DISMISS without prejudice** the Complaint, and, accordingly, **DENY as moot** the remainder of Plaintiff's Motions.  Docs. 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17.  I **DENY** Plaintiff's Motion for Leave to Proceed *in Forma Pauperis*.  Doc. 2.  If Plaintiff wishes to proceed with his claims, he may do so by refiling the action and paying the entire filing fee upfront.  Dupree, 284 F.3d at 1236.

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[16]  Though Plaintiff has, of course, not yet filed a notice of appeal, it is appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (providing that a trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context is judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393

---

[15]   If Plaintiff wishes to continue to litigate his claims against Defendants, he may do so, but he must pay the entire filing fee upfront.  See Vanderberg, 259 F.3d at 1324.

[16]   A certificate of appealability is not required in this § 1983 action.

(11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

The above analysis of Plaintiff's action shows that Plaintiff does not possess any non-frivolous issues to raise on appeal, and an appeal would not in good faith.  Just as Daker's status as a three-striker prevents him from filing this action without prepaying the filing fee in this Court, it also blocks him from achieving *in forma pauperis* status on appeal.  Thus, the Court should **DENY** him *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, the Court **DENIES** Plaintiff's Motion for Leave to Proceed *in forma pauperis*.  Doc. 2.  Additionally, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint, **DENY as moot** Plaintiff's Motions for Preliminary Injunction or Temporary Restraining Order, docs. 6, 7, 8, 9, 10, **DENY as moot** Plaintiff's remaining Motions, docs. 11, 12, 13, 14, 15, 17, **DIRECT** the Clerk of Court to close this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of March, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA